## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

LARRY LESPIER,

    Plaintiff,

vs.             CASE NO: 2:06-cv-87-Jua29SPC

JOANNE BARNHART,
Commissioner of Social Security,

    Defendant.

_____

## REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

   This matter comes before the Court on the Plaintiff Larry Lespier's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on February 10, 2006.  The Plaintiff filed his Memorandum of Law in Support of the Complaint (Doc. #18) on August 29, 2006.  The Commissioner filed her Memorandum of Law in Support of the Commissioner's Decision (Doc. #21) on October 26, 2006. Thus, the Motion is now ripe for review.

   The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

## FACTS

### Procedural History

The Plaintiff filed his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income payments on April 5, 2000. (Tr. 16, 63-66). The claims were denied initially and upon reconsideration. (Tr. 16). The Plaintiff timely filed a request for hearing. (Tr. 16, 54). The Plaintiff previously filed an application for disability benefits in 1992 and was awarded benefits. (Tr. 16). The Plaintiff's disability benefits ended on October 2000. (Tr. 16). A hearing was held on January 9, 2004, before the Honorable Irwin Bernstein, Administrative Law Judge (ALJ). (Tr. 16, 375-386). The ALJ issued an unfavorable determination on March 5, 2004. (Tr. 16-24). The Plaintiff filed a request for reconsideration with the Appeals Council on April 29, 2004. (Tr. 12). On December 28, 2005, the Appeals Council declined to review the decision making the ALJ's decision the final decision of the Commissioner. (Tr. 6-8). Pursuant to 42 U.S.C.§ 405(g), the Plaintiff now seeks judicial review of the Commissioner's final decision.

### Plaintiff's History

The Plaintiff was born on December 2, 1959. (Tr. 63). The Plaintiff was forty-four (44) at the time of the hearing. (Tr. 17). The Plaintiff had a high school education and a past work history as an autobody paint laborer. (Tr. 17). The Plaintiff alleges an onset disability date of August 1, 2000, due to diabetic neuropathy, with burning and tingling of the feet, an injured left hip, and right knee problems. (Tr. 17).

### Medical and Psychological History

The Plaintiff has a history of Insulin dependent diabetes mellitus and was hospitalized for diabetic ketoacidosis in March 1998, and June 1998. (Tr. 123-134). The Plaintiff was diagnosed with

diabetic ketoacidosis with gastritis, nausea and vomiting, mild renal failure and leukemoid reaction. (Tr. 125, 131).

On May 13, 2000, the Plaintiff was involved in a motorcycle accident. (Tr. 254-284). The Plaintiff underwent multiple x-rays which revealed degenerative changes of the cervical spine and lumbar spine without acute fracture. (Tr. 255). The chest x-ray revealed no pneumothorax or fracture. (Tr. 255). X-rays of the shoulders showed subluxation. (Tr. 255). The Plaintiff had an avulsion of the greater tuberosity of the right humerus. (Tr. 255). The x-rays of the left hip and pelvis revealed a femoral neck fracture. (Tr. 255). The Plaintiff also had a facial laceration, 4 cm in length. (Tr. 256). The Plaintiff underwent fluoroscopic reduction of left femoral neck fracture with rigid internal fixation with three cannulated screws, open reduction and internal fixation by percutaneous pinning of the left hip. (Tr. 254).

On May 27, 2000, the Plaintiff was admitted to Lee Memorial Hospital, Fort Myers, Florida, for mechanical complication of orthopedic device secondary to femoral neck fracture. (Tr. 135). The Plaintiff was wheelchair bound from the motorcycle accident and got out of his chair to help his father from a fall. (Tr. 135). The Plaintiff was examined by Dr. Mark Farmer who noted a collapse of the previous reduced hip fracture with migration of the cannulated screws. (Tr. 135). He was admitted for surgical repair consisting of removal of hardware followed by open reduction and internal fixation of the left hip. (Tr. 19, 135). The Plaintiff was discharged on postoperative day number three (3) and physical therapy was ordered. (Tr. 135).

On June 12, 2000, the Plaintiff underwent x-rays of the left hip, pelvis, and both shoulders. (Tr. 159). Two views of the left hip show the sacrum and sacroiliac joints to be intact. (Tr. 159). The right hip was maintained. (Tr. 159). Three (3) Knowles pins are transfixing a fracture at the

base of the femoral neck. (Tr. 159). Further, a linear fracture line was seen on the lateral view, extending down through the intertrochanteric region toward the proximal end of the femoral shaft. (Tr. 159). The right shoulder showed evidence of an avulsion type fracture at the greater tuberosity. (Tr. 159). The left shoulder showed no evidence of fracture or bone destruction. (Tr. 159).

On November 24 through November 27, 2000, the Plaintiff was hospitalized with abdominal pain, nausea and vomiting and glucose levels in the 800's with mild acidosis. (Tr. 19, 160-161). The Plaintiff was admitted with a diagnosis of diabetic ketoacidosis, poorly controlled diabetes, acute pancreatitis, upper gastrointestinal bleed, and neuropathy. (Tr. 160). The Plaintiff was given a saline and an insulin drip. (Tr. 161). The Plaintiff underwent an esophagogastroduodenoscopy which revealed distal esophagitis and minimal gastritis. (Tr. 161). He was put on a clear liquid diet on November 25, 2000. (Tr. 161). The Plaintiff was taken off intravenous fluids and given Humalog insulin. (Tr. 161). He was instructed to stay in the hospital but signed out against medical advice. (Tr. 161). The Plaintiff's discharge diagnosis was diabetic ketoacidosis, diabetes mellitus, acute pancreatitis, upper gastrointestinal bleed, diabetic neuropathy, gastritis, distal esophagitis, prerenal azotemia, and anemia. (Tr. 160).

On December 29, 2000, presented to the emergency room with a chief complaint of vomiting blood with coffee grounds. (Tr. 173). Upon examination, the Plaintiff was in slight distress secondary to coffee ground emesis. (Tr. 173). There was tenderness in the epigastric and right upper quadrant areas. (Tr. 173). The Plaintiff received normal saline two (2) liters bolus and regular Insulin 15 units intravenously and was started on Insulin drip at 10 units per hour. (Tr. 19, 173). The Plaintiff refused the NG tube. (Tr. 19, 173). The final diagnosis was diabetic ketoacidosis, hyperglycemia, and hematemesis, vomiting blood. (Tr. 19, 174).

4

On February 28, 2001, the Plaintiff underwent a neurological examination with Dr. Gerardo A. Gamez for evaluation of neuropathy. (Tr. 19, 175-177). The Plaintiff's blood sugars were in the range of the low 200's and he reported that he became very dizzy when his blood sugars were less than 120/mg/dl. (Tr. 19, 175). The Plaintiff complained of chronic pain and would consume two to three percocet a day. (Tr. 175). The Plaintiff smokes one pack of cigarettes a day, but denies alcohol or illicit drug abuse. (Tr. 175). Physical examination revealed some extensive scarring on bilateral knee regions, no tenderness of S1 joints or sciatic notches. Straight leg raising was normal. (Tr. 175). Motor testing was normal and there was not ataxia or tremors. (Tr. 19, 175). Sensory examination revealed blunting to vibration and pinprick distal lower extremities not as bad. (Tr. 19, 177). Gait was with borderline widened base, which the doctor stated may be part of his neuropathic characteristics. (Tr. 19, 177). Light touch and cold temperature were appreciated symmetrically. (Tr. 19, 177). Dr. Gamez' impressions were of diabetic neuropathy, moderate to severe, arthralgias and multiple injuries from  motorcycle accidents including bilateral knees, left shoulder. (Tr. 19, 177). Dr. Gamez recommended regular walk exercises and absolute cessation of smoking. (Tr. 19, 177).

From March 29, 2002 ,through March 31, 2002, the Plaintiff was hospitalized for diabetes mellitus type 1, diabetic ketoacidosis - resolved and right lower lobe infiltrate. (Tr. 19, 178-187). Dr. Sergio R. Mather noted that the Plaintiff had a long-standing history of Type 1 Diabetes associated with a significant degree of noncompliance. (Tr. 19, 178). The Plaintiff was found to have right lower lobe infiltrate which most likely prompted the decompensation of his diabetes. (Tr. 19, 178). The Plaintiff was advised on how to operate on sick days in regards to his Insulin in order to try to avoid another episode of diabetic ketoacidosis in the future. (Tr. 20, 178). Despite Dr. Mather's advice,  the Plaintiff was taken to the emergency room on May 19, 2002, with elevated

blood sugar and shortness of breath.  He was not taking his insulin.  (Tr. 20, 188-203).  The Plaintiff

was diagnosed with diabetic ketoacidosis and tested positive for smoking, cocaine intoxication and

electrolyte imbalance.  (Tr. 20, 189).

Medical records show the Plaintiff was seen at the Family Health Centers from October 9,

2002, through December 5, 2003 for routine health care and monitoring of his diabetes.  (Tr. 20, 210-

220, 285-290).  On October 9, 2002, the Plaintiff was diagnosed with diabetes under poor control,

diabetic neuropathy, and depression.  (Tr. 20, 214).  He weighed 156 pounds and was noted to be

5'9" tall.  (Tr. 214).  On October 16, 2002, records show he complained of depression and being

dependent on his parents.  (Tr. 20, 213).  The Plaintiff appeared upset but denied suicidal or

homicidal thoughts.  (Tr. 20, 214).  The Plaintiff felt well other than that and said that he could not

afford Neurontin.  (Tr. 20, 214).  The Plaintiff's parents agreed to pay for Insulin.  The Plaintiff was

advised of the Ruth Cooper center.  (Tr. 20, 213).  On December  4, 2002, the Plaintiff requested a

prescription for Percocet.  (Tr. 20, 212).  The Plaintiff stated that the Celexa helped with his

depression. (Tr. 20, 212).  On January 28, 2003, the Plaintiff complained of constant pain in his feet.

(Tr. 20).  On March 13, 2003, the Plaintiff's blood sugar was 371.  (Tr. 20, 210).  The Plaintiff

requested a refill  prescription for Percocet.  (Tr. 20, 210).  It  was noted that the Plaintiff was in no

acute distress, but walked slowly with a slight limp.  (Tr. 20, 210).

The Plaintiff was hospitalized on July 31, 2003, through August 2, 2003, with complaints of

abdominal pain, nausea, vomiting and chills.  (Tr. 20, 235-253).  The Plaintiff's blood sugar on

admission was greater than 800 and his urine was positive for acetone.  (Tr. 20, 237, 242).  He was

given intravenous fluids and started on Insulin therapy.  (Tr. 20).  The Plaintiff responded well to

therapy and his symptoms resolved. (Tr. 20).  He was discharged on Hummulin 70/30, Novolog

Insulin, and Pepcid.  (Tr. 20).

Medical records from the Family Health Centers show that the Plaintiff was seen through December 5, 2003, for monitoring of his diabetes and complaints of foot pain.  (Tr. 20, 285-290). Susan S. Bingham, ARNP, on January 6, 2004, wrote on a prescription form that the Plaintiff has multiple problems related to his diabetes and history of motor vehicle accident.  (Tr. 20, 291).  She further stated that peripheral neuropathy and musculoskeletal damage have resulted in chronic pain. (Tr. 20, 291).

### *Administrative Law Judge's Decision*

Upon consideration of the record, the ALJ found that the Plaintiff meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of the decision.  (Tr. 23). The ALJ found that the Plaintiff had not engaged in substantial gainful activity since August 1, 2000.  (Tr. 23). The ALJ found that the Plaintiff's Insulin-dependent diabetes mellitus, peripheral neuropathy, and status post left femoral fracture, are "severe" impairments, based upon the requirements in the Regulations (20 CFR § 404.1521 and 416. 920(b)).  (Tr. 23). However, the medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.4. (Tr. 23).  The ALJ found that the Plaintiff's allegations regarding his limitations to the extent alleged are not totally credible.  (Tr. 23).  The ALJ determined that the Plaintiff has a residual functional capacity to perform a full range of sedentary work with lifting up to ten (10) pounds at a time, frequently lifting and carrying small articles, sitting for up to six (6) hours in an eight (8) hour day and standing and/or walking for up to two hours in an eight (8) hour day.  (Tr. 24). Further, there are no non-exertional limitations that significantly impact on his ability to perform

7

sedentary work.  (Tr. 24).   The ALJ found that the Plaintiff was unable to perform any of his past relevant work.  (Tr. 24).  The ALJ found that the Plaintiff is a forty-four (44) and is considered a "younger individual" with a high school education.  (Tr. 24). Given the Plaintiff's age and residual functional capacity, the ALJ determined that the issue of transferability of work skills is not material. (Tr. 24). The ALJ concluded that based on an exertional capacity for sedentary work, the Plaintiff's age, education, and work experience, and pursuant to Sections 404.1569 and 416.967 of Regulations No. 4 and Rule 201.28, Table No. 1 of Appendix 2, Subpart P, the Plaintiff was found "not disabled". (Tr. 24).  The ALJ further concluded that the Plaintiff's capacity for a full range of sedentary work has not been significantly compromised by any nonexertional limitations.   Accordingly, using the previously cited rule, the Plaintiff was not disabled.  (Tr. 24).  Thus, the Plaintiff was found not to be under a "disability" as defined in the Social Security Act, at any time through the date of the decision.  20 C.F.R. §404.1520(g).

## THE STANDARD OF REVIEW

### A.  Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards,  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[2].  See 20 C.F.R. §§ 404.1520(a), 404.920(a).  The

---

[2]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows: *Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
  *Step 2.*  Does the claimant suffer from a severe impairment?  If not, then

Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356, 1458 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If

---

the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
   *Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.
   *Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.
   *Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

## B.  Reversal and Remand

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards).  Where the district court cannot discern the basis for the Commissioner's decision, a

sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  Jackson, 99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994).  With a

11

sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

The Plaintiff argues that the ALJ erred in his decision by (1) failing to provide the Plaintiff with a full and fair hearing; (2) relying upon the Medical Vocational Grids instead of calling upon a Vocational Expert as a result of finding the Plaintiff's hip, arms, hands, fingers, knees, and visual impairments to be non-severe; (3) failing to develop the record in not seeking a psychological examination; (4) failing to consider an alleged implied request to reopen the Plaintiff's prior file and (5) failing to find that the Plaintiff met the requirements of Listing §9.08A and whether the ALJ's finding that the Plaintiff can perform a full range of sedentary work is based upon substantial

---

[3]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

evidence.  The Government argues that the ALJ's decision is supported by substantial evidence and the decision applied the correct legal standards.  Thus, the Government contends that the ALJ's decision should be affirmed.

### (1) Whether the ALJ Provided the Plaintiff with a Full and Fair Hearing

The Plaintiff argues that the ALJ failed to provide him with a full and fair hearing by improperly conducting the hearing and failing to make a complete record of the hearing proceedings. Specifically, the Plaintiff states that, contrary to the Hearing Appeals and Litigation Law Manual (HALLEX), the ALJ held several off-the-record discussions that were not summarized on the record, that the transcript contained an "inaudible" portion, and that the hearing was abbreviated.  The Defendant contends that the Plaintiff was represented by Counsel at the hearing who did not object to the proceedings, failed to show how the ALJ's actions were prejudicial, and failed to meet his burden of proving he is disabled.

HALLEX provides guidelines for the ALJ's hearing process.  HALLEX like all administrative manuals lacks the legal authority to bind the ALJ. *See* Moore v. Apfel, 216 F.3d 864, 868-869 (9th Cir. 2000) (holding that HALLEX lacks legal authority because its an internal manual without legal force)).  This is because administrative manuals are not vetted through the public hearing process like the Code of Federal Regulations (CFR) which pre-publishes potential regulations to allow the public and interest groups the opportunity to object or comment on the rules before they become effective.

First, in support of his argument, the Plaintiff cites to the HALLEX guidelines, stating that the ALJ is required to summarize on the record the content and conclusion of any off-the-record discussions The Plaintiff argues the off-the-record discussions, the brevity of the hearing, and the concluding statements from counsel give rise to the suspicion that this case may have been approved

13

for benefits off-the-record   However, there is no substantive evidence that would suggest that the ALJ approved benefits in this case in an off-the-record conversation with Counsel and then subsequently issued an unfavorable decision in writing.

To the extent that the Plaintiff argues that the actions of the ALJ were prejudicial to the Plaintiff during the hearing, as the Government points out, the Plaintiff was represented by Counsel. When a Plaintiff alleging denial of a full and fair hearing and consequent denial of due process was unrepresented by counsel at the hearing, he must show that the deficient hearing prejudiced him. Boykin vs. Apfel, 2000 WL 284201 (*citing* Brown vs. Shalala, 44 F.3d. 931, 935 (11th Cir. 1995); Kelly vs. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985).   When, as here, the Plaintiff was represented by counsel at the hearing, his burden to show prejudice is at least as great.  Id.  At a minimum, the plaintiff must "alleg[e] that the record considered by the ALJ as a whole was incomplete or inadequate" and that a more thorough hearing "would have brought forth...additional evidence beneficial to" the plaintiff.  Id (*citing* Kelly vs. Heckler, 761 F.2d at 1540).  The plaintiff must identify "undiscovered facts or an undeveloped avenue of inquiry [and] demonstrate evidentiary gaps in the record which have resulted in prejudice".  Id. (*citing* Graham vs. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997).

In the this case, the ALJ conducted an inquiry which included questions regarding the Plaintiff's injuries as a result of a motorcycle accident and the Plaintiff's daily activities. Counsel then ended the inquiry by stating "I don't have any further questions."  Plaintiff's Counsel had the opportunity to examine the Plaintiff to further present his case but chose not to.  A review of the transcript does not show at any time where Counsel objected to the ALJ's inquiry or the manner in which the ALJ conducted the hearing.  Counsel noted the list of medications which was submitted

14

to the ALJ and acknowledged that the ALJ was in receipt of a letter from the Plaintiff's latest doctor. (Tr. 385). When given the opportunity to give a closing argument, Counsel simply stated "He's got a clear meeting of 9.8. He's got severe type 1 diabetes molitis (phonetic)". (Tr. 386). The hearing was then concluded. (Tr. 386). Counsel did not object to closing the hearing nor did he suggest that there was additional evidence to be presented.

The Plaintiff was given the opportunity to present his case and was represented by competent counsel. The Plaintiff supplied the ALJ with a comprehensive medical record, and was subject to inquiry from his own Counsel. The Court finds that the Plaintiff has failed to show prejudice based upon an incomplete or inadequate record and therefore finds that the Plaintiff's argument lacks merit.

### (2) Whether the ALJ Erred in Relying Upon the Medical-Vocational Guidelines (Grids)

In this case, the ALJ found that the Plaintiff could not meet the demands of his past relevant work. (Tr. 23). Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Id. at 1558; Allen v.Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. Foote, 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P,Appendix 2, § 200.00 (e); Foote, 67 F.3d at 1559 (citing Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L. Ed. 2d 66 (1983) (holding that exclusive reliance on the grids is appropriate in

cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Foote, 67 F.3d at 1559; MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (when nonexertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Foote, 67 F.3d at 1559.

The Plaintiff argues that the ALJ erred by relying on the Vocational Grids instead of eliciting the testimony of a vocational expert to consider the Plaintiff's alleged impairments of his arms, hands, fingers, knees and vision or in the alternative the ALJ should have found the Plaintiff's alleged impairments created non-exertional impairments that precluded the use of the grids. The Defendant argues that substantial evidence supports the ALJ's determination regarding the Plaintiff's alleged impairments and therefore, the ALJ's use of the Grids was proper. Thus, the Court must address whether or not the ALJ sufficiently addressed the Plaintiff's alleged impairments and then whether or not the ALJ should have called a VE or was proper in relying solely on the grids.

16

The  Plaintiff argues that it is reasonable to assume that his conditions would have more than a minimal impact on his ability to reach, use his hands, even on an intermittent basis.  However, under the Regulations, the Plaintiff bears the burden of proof of his disability and neither the ALJ nor the Court may  assume that his condition created more than minimal impacts on his ability to preform a full range of sedentary work.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

In this case, the ALJ concluded that the medical evidence did not support the Plaintiff's claims regarding the impact of his conditions on his ability to do any work activities. (Tr. 21).  The ALJ stated in his decision:

> Despite his allegations of persistent pain and functional limitations due to his impairments, the undersigned notes that the medical records do not fully support those allegations on a consistent or documented basis to the extent alleged.
>
> In February 2001, Dr. Gamez indicated that motor testing was normal and sensory examination revealed blunting to vibration and pinprick distal lower extremities not as bad.  Light touch and cold temperature were appreciated symmetrically.  The doctor also recommended that the claimant do regular walking exercises and quit smoking. . .
>
> The State Agency examining physician in July 2002, completed a physical functional capacity assessment of the claimant in which the medical evidence was reviewed. Based on the evidence, it was determined that the claimant was not precluded from medium work activities (Exhibit B10F).  The undersigned acknowledges that through the opinion of the reviewing physician is not entitled to substantial weight due to the non-examining nature which forms the basis of the opinion, it nevertheless remains part of the record and does have some probative value.

(Tr. 21).  The ALJ pointed to the medical evidence submitted by Dr. Gamez, the Plaintiff's treating physician.  It was noted that the Plaintiff should engage in walking exercises and quit smoking as part of his treatment.  The ALJ went further and stated:

> While the claimant might have some pain in his feet and legs due to diabetic neuropathy and may not be able to engage in a great deal of physical exertion, the totality of the evidence in the record does not persuade the undersigned that he is

17

precluded from even sedentary work activities.  He testified that he sits most of the day.

(Tr. 22).  As the ALJ points out, the Plaintiff testified himself that sitting was "no problem."  (Tr. 383).  The Plaintiff also testified that he could lift fifteen (15), twenty (20) pounds and stated that he could move his fingers.  (Tr. 383, 384).

Although the Plaintiff claims that the ALJ did not consider the opinions of the State Agency examining physician, the ALJ actually discusses the physical functional capacity assessment completed on July 2002.  (Tr. 21).  Upon review of the evidence, the State Agency physician opined that the Plaintiff was capable of medium work.  (Tr. 21, 202-209).  The ALJ gave the opinion some weight.  (Tr. 21).  Therefore, having considered the Plaintiff's testimony and the medical opinions of treating and non-examining physicians,  the ALJ concluded that the Plaintiff was capable of performing a full range of sedentary work[4].

The general rule is that after determining the Plaintiff's RFC and ability or inability to return to past relevant work, the ALJ may use the listing of medical vocational guidelines found in CFR § 404. Subpart P, Appendix 2 (grids) to determine whether other jobs exist in the national economy that the Plaintiff is able to perform. Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004).  Here, the Plaintiff's past relevant work was as auto body worker.  (Tr. 22).  The Dictionary of Occupational Titles (DOT) describes this job as a skilled job requiring medium work activities.  (Tr. 22).  Given the Plaintiff's RFC, the Plaintiff was found incapable of returning to his past relevant work.  (Tr. 22).

---

[4]The Regulations define sedentary work as lifting no more than 10 pounds at at time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 CFR §404.1567(a).

However, the ALJ properly determined that the Plaintiff was capable of a full range of sedentary work. Since the ALJ determined that the Plaintiff's non-exertional limitations did not significantly limit the claimant's basic work skills at the sedentary range of work level, then the ALJ properly relied on the grids to determine disability. Phillips, 357 F.3d at 1243. Thus, the ALJ was not required to use VE testimony in this case and the use of the Grids was appropriate.

*(3) Whether the ALJ Failed to Develop the Record by Not Seeking a Psychological Consultation*

The Plaintiff argues that the ALJ failed to develop the record with regard to the claimant's depression when he did not seek a psychological consultation to determine the severity of the claimant's depression.  The Plaintiff argues that the ALJ was required to order a consultative psychiatric examination because, based upon Psychiatric Review Technique Form (PTRF) completed by a State Agency non-examining psychologist, there was insufficient evidence to determine whether or not the Plaintiff had a mental impairment.  The Commissioner counters by stating the Plaintiff has the ultimate burden in proving disability and failed in his responsibility to furnish medical and other evidence in support of his claims.  Further, the Commissioner contends that the Plaintiff was represented by Counsel and could have provided evidence to substantiate his claim of disabling depression.

The ALJ is required to order additional medical tests and examinations only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; Conley v. Bowmen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988); Reeves v.

19

<u>Heckler</u>, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).   Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. 20 C.F.R. §416.917 (1998).  Moreover, "[p]ursuant to 42 U.S.C. §421(h) and <u>McCall v. Bowen</u>, 846 F.2d 1317, 1320 (11th Cir. 1988), the ALJ should order a consultative psychiatric examination if the combination of the claimant's testimony and the opinions of the treating physician(s) indicates the existence of a mental impairment." <u>Sims v. Apfel</u>, 2001 WL 303295 (S.D. Ala. 2001) (*citing* <u>Wooten v. Shalala</u>, 1994 WL 655886 5 (M.D. Ga. 1994).

Here, the ALJ considered the Plaintiff's claim of depression and found that the Plaintiff did not suffer from a severe mental impairment.  The ALJ discussed the Plaintiff's depression as follows:

> There is an indication in the record that the claimant complained of depression and was prescribed medication (Celexa) by his treating physician.  There is no evidence that he sought or received any formal psychiatric or psychological treatment.  The State Agency non-examining psychologist indicated, in February 2003, that there was insufficient evidence to determine whether the claimant suffered from a severe mental impairment. (Exhibit B12F).  Based on the evidence, the undersigned finds these opinions are consistent with the record.  The undersigned finds that the record reflected no specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality as a result of depression or any other mental disorder.  Furthermore, there was nothing in the record showing that mental problems interfered with the claimant's daily activities, social functioning, concentration, persistence and pace or deterioration or decompensation in a work or work-like setting.  In December 2002, the claimant said that Celexa helped his depression. (Exhibit B11F, pages 1-3).  Based on consideration of the entire evidence of record, the undersigned concludes that the claimant's mental disorder is only a slight abnormality that has such a minimal effect on him that it would not be expected to interfere with his ability to work, irrespective of age, education, or work experience.  Therefore, his mental impairment is not "severe". (Tr. 18 ).

Clearly, the ALJ gave consideration to the Plaintiff's claim of depression.  The ALJ notes that the Plaintiff took Celexa to treat depression which helped the Plaintiff. (Tr. 212).  The Plaintiff also appeared to have good eye contact and was smiling.  (Tr. 212). The ALJ points to the PRTF

completed by Dr. Timothy Foster wherein Dr. Foster stated  there was insufficient evidence to conduct a medical assessment of the impairment or it's severity. (Tr. 232).   Dr. Foster noted that the Plaintiff claimed concentration problems on the reconsideration application.  Notably, however, the Plaintiff's representative did not respond regarding these problems and further gave explicit instructions not to contact the Plaintiff regarding this case.  (Tr. 232).   As the ALJ correctly states, the medical record does not support a finding that the Plaintiff was limited by depression but rather was being treated conservatively with medication which was documented as helpful. The Plaintiff's representative cut off any further communication regarding any further assessment of mental impairment and therefore, the Plaintiff failed in his burden in proving disabling depression and failed in his responsibility to furnish medical and other evidence in support of his claims of mental impairment.

The Plaintiff further argues that he did not seek formal psychiatric or psychological treatment because he was incapable of financing such treatment.  The Eleventh Circuit has held that non-compliance with prescribed medical treatment without a good reason will preclude a finding of disability and poverty excuses non-compliance.  Ellison v. Barnhart, 355 F.3d 1272, 1275 (*citing* Dawkins v. Bowen, 848 F.2d 122, 1213 (11th Cir. 1988).   Here, while the Plaintiff was diagnosed with depression,  the Plaintiff was made aware of the Ruth Cooper Center or Southwest Florida Addiction Services (SWFAS), both psychological treatment facilities for low income individuals. (Tr. 213, 330). Additionally, the Plaintiff was not found to be a hazard, therefore, participation in treatment would have been on a volunteer basis.  (Tr. 330).  As noted, the Plaintiff was treated conservatively and was receiving his prescription Celexa regularly.  (Tr. 212, 213, 214).

Therefore, having properly found the Plaintiff's depression non-severe, the ALJ did not need

to probe further into the severity of the Plaintiff's claim of depression by requesting a psychiatric consultative examination because the record established that such an examination was unnecessary for the ALJ to render an informed decision.  Thus, the Plaintiff's argument lacks merit.

### (4) Whether the ALJ Erred by Not Considering the Plaintiff's Application an Implied Request to Re-open

The Plaintiff argues that, pursuant to HALLEX I-2-9-1, the ALJ should have considered the Plaintiff's application filed on April 5, 2002, as an implied request to re-open the Plaintiff's previous application.  The Defendant argues that the Plaintiff did not make an implied request to reopen and the ALJ was under no specific responsibility to construe it as such.

In support of the Plaintiff's argument, Counsel again relies heavily on the HALLEX guidelines.  Specifically, the Plaintiff cites to HALLEX I-2-9-1.  The Plaintiff cites HALLEX I-2-9-1 as follows:

> If an ALJ is issuing a decision on a current application, and the record shows that in connection with the current application the claimant did not specifically request reopening and revision of the prior determination or decision, but did allege an onset date of disability within the previously adjudicated period, the ALJ must consider the claimant's current application to be an implied request for re-opening and revision of the determination or decision on the prior application. Under these circumstances, if the ALJ's decision on the current application is unfavorable, the ALJ will not discuss or make any finding on the issues of reopening and revising the unfavorable determination or decision on the prior application.

The Plaintiff also states that although the ALJ does not need to make a finding if the current decision is unfavorable.  The Commissioner contends that HALLEX is not legally binding authority upon the ALJ.

The Court finds that the Plaintiff's reliance upon the HALLEX manual is misplaced.[5]  Clearly, the manual was not intended to be used as a mandate but rather a guidance tool.  Therefore, the ALJ is not required, pursuant to these guidelines to re-open the Plaintiff's previous application. Furthermore, the Court cannot order the ALJ to reopen a claimant's prior application absent a colorable constitutional claim.  Califano v. Sanders, 430 U.S. 99, 107-109 (1977).  Here, the Plaintiff has not raised a constitutional violation where the Plaintiff may have been denied due process.  The Plaintiff has been represented by Counsel through the administrative process and at no point has Counsel raised a constitutional violation where a review of the ALJ's decision not to reopen is justified.

The Plaintiff also argues that the ALJ should have obtained the prior file which contained medical records pertaining to the Plaintiff's motorcycle injuries. The Plaintiff states that these records regarding the motorcycle accident on May 13, 2000, were never obtained by the ALJ and should therefore be considered new evidence justifying a remand under a Sentence-six remand.  However, to justify a remand on new evidence not presented during the administrative process the claimant must show that there is good cause for the failure to offer the evidence at the administrative level and that the new evidence would change the outcome. Cherry v. Heckler, 760 F.2d 1186, 1192 (11th Cir. 1987).   Good cause exists where the evidence did not exist at the time of the administrative

--------

[5]In order for HALLEX to have the force and effect of law, it must: (1) prescribe substantive rules-not interpretive rules, general statements of policy or rules of agency organization, procedure or practice-and, (2) conform to certain procedural requirements. Moore, 216 F.3d at 868.  To satisfy the first requirement the rule must be legislative in nature, affecting individual rights and obligations; to satisfy the second, it must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress.  Id.  The test of this section indicates that HALLEX is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members.  Id.  As such, it does not prescribe substantive rules and therefore does not carry the force and effect of law.  Id.

proceeding. Id.

Here, the ALJ was made aware of the motorcycle accident and injuries that the Plaintiff sustained as a result.  (Tr. 18-19).  The ALJ stated as follows:

> On May 13, 2000, the claimant was injured in a motorcycle accident and suffered multiple fractures and a left femoral neck fracture.  He also had an acute fracture/subluxation of the right proximal humerus with reduction; acute subluxation of the left humerus with reduction; and clinical right hand fracture.  On May 13, 2000, he underwent fluoroscipic reduction of left femoral neck fracture with rigid internal fixation with three cannulated screws, open reduction of internal fixation by percutaneous pinning of the left hip (Exhibit 14F).  (Tr. 18-19).

As the ALJ referenced specific injuries sustained and treated, clearly, the ALJ was aware of the Plaintiff's injuries resulting from the accident. The ALJ  cites to the record where the medical evidence consists of emergency and operative reports relevant to the accident. (Tr. 254-284).  The record also contains the medical records which reflect the Plaintiff's subsequent re-injury while trying to assist his father during a fall. (Tr. 135).  Therefore, the ALJ was privy to medical records that the Plaintiff claims to be "new".  To the extent that additional evidence exists, the Plaintiff has failed to provide sufficient good cause as to why it was not submitted in conjunction with the emergency, radiologic and operative reports and thus, warranting a remand.  Therefore, the Court finds that the Plaintiff argument to remand under sentence six lacks merit.

### (5) Whether the ALJ Erred in His Determination That the Plaintiff's Impairments Did Not Meet or Equal Listing §9.08A

The ALJ's sequential evaluation process states that it is the duty of the ALJ at Step 2 to determine whether or not the claimant's impairments are considered "severe."  If the impairments are considered "severe," the ALJ moves to Step 3 and determines whether the claimant's impairments meet or medically equal one of the listed impairments set forth in 20 C.F.R., Part 404, Subpart P,

Appendix 1, the Listings of Impairments. The listings include medical criteria for specified disorders of thirteen major body systems. <u>Beech vs. Apfel</u>, 100 F.Supp.2d. 1323, (S.D. Ala. 2000). In <u>Beech vs. Apfel</u>, the Court determined that a claimant may prove that he is disabled by either (1) meeting the Listing or (2) equaling the Listings. <u>Id</u>. at 1333. In order to meet a Listing, the claimant must (1) have a diagnosed condition that is included in the Listing and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable Listing and the duration requirement. <u>Id</u>. at 1333. A diagnosis alone is not sufficient. <u>Id</u>. at 1333. In order to equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings. Id. at 1333 (*citing* <u>Wilkinson on Behalf of Wilkinson v. Bowen</u>, 847 F.2d. 660, 662 (11th Cir. 1987); *see also* <u>Bell v. Bowen</u>, 796 F.2d. 1350, 1353 (11th Cir.1986). ("when a claimant contends that he has an impairment meeting the listed impairments..., he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such equivalency.").

Here, the ALJ stated that the medical evidence indicated that the Plaintiff suffered from Insulin dependent Diabetes Mellitus, peripheral neuropathy, and status post left femoral fracture. These impairments were considered "severe," however, the ALJ found they were not "severe" enough to conform to the requirements to meet or medically equal one of the listed impairments. (Tr. 18) The Plaintiff argues that the ALJ was in error by concluding that the Plaintiff's impairments did not meet or medically equal Listing of Impairments §9.08. Listing 9.08 provides:

"diabetes mellitus...with (A) neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement, or gait and station (see 11.00C) or (B) acidosis

25

occurring at least on the average of once every 2 months documents by appropriate blood chemical tests (pH or $PCO^2$ or bicarbonate levels; or (C) retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.  20 C.F.R pt. 404, subpt. P, app.1 § 9.08.

In order to meet the requirements of this Listing, the Plaintiff must show that the diagnosis is sufficient to satisfy the listed impairment. See 20 C.F.R. § 404.1525(d).   Further, the Plaintiff must satisfy the duration requirement of a consecutive twelve-month period.   See 20 C.F.R. § 404.1525(d), 404.1525, 404.1526; 42 U.S.C. § 423(d)(1)(A).

Upon review of the medical evidence provided, the Plaintiff failed to provide substantial medical evidence or laboratory findings to support a finding that the Plaintiff meets the first requirement of Listing 9.08A.  The Plaintiff argues that it would be reasonable to assume that his diabetic neuropathy has progressively gotten worse and therefore he has met the requirement of disability under § 9.08.  However, "to meet a Listing a claimant must have a diagnosis included in the Listing and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Johnson v. Barnhart, 148 Fed. Appx. 838, 839 (11th Cir. 2005) (citing Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002)).

Here, the ALJ found that the Plaintiff did not have the medical evidence to support a finding of disabled under the Listings.  The ALJ points to medical records from Dr. Gamez who evaluated the Plaintiff for neuropathy. (Tr. 176-177).  Dr. Gamez opined that the Plaintiff's motor testing was normal and sensory examination revealed blunting to vibration and pinprick distal lower extremities not as bad.  (Tr. 21, 177).  Dr. Gamez recommended that the Plaintiff engage in regular walk exercises and absolute cessation of smoking.  (Tr. 177).  Additionally, the ALJ refers to the State Agency examining physician who completed a physical functional capacity assessment of the Plaintiff

in July 2002. (Tr. 202-210). While the ALJ noted that opinions of the reviewing physicians are not entitled to substantial weight due to the non-examining nature which forms the basis of the opinion, it is part of the record and has probative value. (Tr. 21). The State Agency consultant, Dr. J.D. Perez, opined that the Plaintiff was capable of medium work. (Tr. 207). Dr. Perez stated that the Plaintiff was capable of moving all extremities well, no motor deficits and no neuro deficits. (Tr. 204). The ALJ did acknowledge that the Plaintiff "might have some pain in his feet and legs due to diabetic neuropathy and may not be able to engage in a great deal of physical exertion, the totality of the evidence in the record does not persuade the undersigned that he is precluded from even sedentary work activities." (Tr. 22).

The ALJ clearly considered the Plaintiff's subjective complaints and the medical evidence submitted. Although he did not refer specifically to Listing 9.08, the ALJ did provide substantial evidence supporting his finding that the Plaintiff's diabetes neuropathy did not meet or equal Listing 9.08. The ALJ noted that despite the Plaintiff's allegations of disabling pain, Dr. Gamez recommended a walking regimen for the Plaintiff. Further, medical evidence indicated that motor function was normal. The Plaintiff testified that he was capable of sitting and lifting 15 to 20 pounds. (Tr. 383). The Plaintiff has not demonstrated that based upon the diagnosis of diabetes mellitus, that a significant and persistent disorganization of motor function in two extremities that results in sustained disturbance of gross and dexterous movement or gait or station exists. Therefore, the Plaintiff fails to satisfy the first requirement of Listing 9.08.

Based upon the reasons above, the Court finds that the ALJ applied the correct legal standard and the decision was based upon substantial evidence such that the evidence would be accepted by a reasonable person in support of the decision.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this ___16th___ day of January, 2007.


SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: Counsel of record

28